Michele L. Braukmann
Attorney at Law
MERIDIAN LAW, PLLC
P.O. Box 22542
Billings, MT 59104
Office: 406.578.8855
Cell: 406.671.3963
Email: michele@meridianlawmt.com

*Attorneys for Tyrel Mraz*

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2020 SEP 24 P 4: 30

FILED

BY _____
DEPUTY

# MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

TYREL MRAZ,
    Plaintiff

-vs-

AMERICAN MEDICAL RESPONSE
AMBULANCE SERVICE, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

CAUSE NO. DV 20 1236

JUDGE DONALD HARRIS

**COMPLAINT AND JURY DEMAND**

COMES NOW, Tyrel Mraz (hereinafter "Mraz" or "Plaintiff"), by and through Counsel of Record, Michele L. Braukmann, of Meridian Law, PLLC, and hereby asserts and alleges that he has been the subject of unlawful employment actions by his former employer American Medical Response Ambulance Service, Inc. (hereinafter "AMR" or "Mraz's employer"), including wrongful termination and retaliation, during the course of his employment and continuing thereafter.

In support of this Complaint, Mraz alleges as follows:

**PARTIES**

1. Mraz is a former employee with AMR, which conducts business and employs employees, including Mraz, in Billings Montana, Yellowstone County Montana. Mraz resides in Billings Montana, Yellowstone County Montana.

2. Upon information and belief, Defendant AMR is a foreign, for-profit corporation incorporated in the State of Delaware.  AMR conducts business throughout the State of Montana, and it employed employees in the State of Montana, including Mraz, during the course of his employment.  Therefore, AMR is subject to all requirements of the Wrongful Discharge from Employment Act ("the WDEA") and applicable state law related to wrongful discharge and retaliation.

## JURISDICTION AND VENUE

3. Mraz hereby incorporates the previous paragraphs, as if fully set forth herein.

4. Jurisdiction is proper in Yellowstone County, Montana, as the parties are located in and/or conducted business and employed employees in Yellowstone County and the acts and omissions applicable to this lawsuit occurred in Yellowstone County, Montana.

5. Venue is proper in Yellowstone County, Montana, as the parties are located in and/or conducted business and employed employees in Yellowstone County and the acts and omissions applicable to this lawsuit occurred in Yellowstone County, Montana.

## FACTS SUPPORTING ALL CAUSES OF ACTION

6. Mraz hereby incorporates the previous paragraphs, as if fully set forth herein.

7. Mraz began his employment with AMR in 2012.  Mraz was hired as a part-time paramedic in 2012, and he was promoted to full-time paramedic in October 2013. He initially applied for and was trained as a Paramedic.

Exhibit A, Page 2

8. Over the course of Mraz's employment with AMR, Mraz was promoted to various other positions, including Paramedic Field Training Officer ("FTO") and Operations Supervisor.

9. Mraz performed his job duties successfully, as is indicated by the fact that he received various promotions.

10. Mraz was never formally reviewed by AMR in his job performance, after his initial credentialing as a Paramedic.

11. Mraz did not receive quarterly evaluations.

12. Mraz did not receive bi-annual evaluations.

13. Mraz did not receive annual evaluations.

14. Mraz was never put on a Performance Improvement Plan or any other similar constructive coaching/counseling plan, during the course of his employment.

15. On June 25, 2020, Mraz received a letter from Brian Hansen, Operations Manager for AMR, indicating that his employment was terminated, effective June 22, 2020 for alleged violations of "AMR Standards of Conduct, Montana SOP's, and the Code of Corporate Ethics." This letter is attached hereto and incorporated herein as Ex. A, Termination of Employment Letter, dated June 25, 2020.

16. Mraz's termination from employment was wrongful, it was in violation of public policy and Montana law, and it was in retaliation for his reporting of quality of care concerns and "doing his job" in a comprehensive manner.

17. AMR failed to follow their own written policies and procedures regarding performance management for employees.

18. AMR retaliated against Mraz for reporting concerns that he had over quality of care.

Page 3 | 12

19. AMR retaliated against and attempted to prohibit Mraz from "doing his job" by attempting to remove his ability to access various computerized systems maintaining information on the employees that he was supervising.

20. Ultimately, AMR wrongfully terminated Mraz from his employment.

21. Mraz now brings the following causes of action against AMR, seeking recovery for the unlawful conduct towards him by AMR.

### CAUSES OF ACTION

#### Count I: Wrongful Discharge from Employment

22. Mraz hereby incorporates the previous paragraphs, as if fully set forth herein.

23. Montana's Wrongful Discharge from Employment Act ("the WDEA") prohibits discharge of an employee from their employment without "good cause." Mont. Code Ann. § 39-2-903 defines "good cause" as follows: "(5) "Good cause" means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason."

24. The WDEA also provides as follows:

> 39-2-905. Remedies. (1) If an employer has committed a wrongful discharge, the employee may be awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest on the lost wages and fringe benefits. Interim earnings, including amounts the employee could have earned with reasonable diligence, must be deducted from the amount awarded for lost wages. Before interim earnings are deducted from lost wages, there must be deducted from the interim earnings any reasonable amounts expended by the employee in searching for, obtaining, or relocating to new employment.
>
> (2) The employee may recover punitive damages otherwise allowed by law if it is established by clear and convincing evidence that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of 39-2-904(1)(a).

25. Mraz was discharged from his employment without "good cause."

26. AMR based its termination of Mraz upon purported violations of the Health Insurance Portability and Accountability Act (hereinafter "HIPAA").   The allegations stated in AMR's termination letter indicate that AMR concluded that Mraz's access of patient records, including discussing the standard of care involved therein with another supervisor and two FTOs, was a violation of HIPAA.  In addition, AMR alleges that Mraz's access of records, pursuant to his job duties, while not "on shift" was a violation of HIPAA and, purportedly, policies and procedures of AMR.

27. No other reasons were given Mraz for termination of his employment, and none were stated in his termination letter.

28. As noted above, under Montana law, an employer is not permitted to terminate any employee without "good cause."   Mraz's termination does not meet those legal standards, and therefore, his termination of employment by AMR is a violation of the WDEA.

29. There is simply nothing under HIPAA requirements that prohibits an employee, in a supervisory position, from reviewing patient charts to ensure quality of care and safety for those patients.

30. In fact, reviewing patient charts to ensure quality of care and safety for those patients was part of Mraz's job as a supervisor.

31. There is nothing in HIPAA that prevents a supervisory employee from discussing with a similar supervisory employee, or someone else in a leadership position, such as an FTO, what he has discovered with regard to critical lapses in care, in order to ensure that the issues are timely and effectively addressed.

32. The above was exactly Mraz's job.

33. Moreover, whether it was or was not, every employee in a healthcare setting has an obligation to know, observe, and report lapses in patient care. That is what Mraz did, during the course of his employment.

34. Mraz was charged with reviewing and reporting safety and patient care concerns, as a supervisor, and he was ethically obligated to do that as a member of the healthcare community.

35. None of the information Mraz had access to was shared, in any respect, outside the workplace.

36. Moreover, the individuals that Mraz discussed these matters with had equal access to the same patient records that Mraz did, barring limitations others in leadership positions might have put in place (for example, related to some/certain FTO's).

37. Any supervisor at AMR had full and complete access to PCR-Viewer, which was the primary mechanism to access patient records.

38. What was purportedly confidential was, in fact, not confidential, as it related to anyone in a supervisory position at AMR.

39. Moreover, there was absolutely no training provided to Mraz, at any time during his entire employment, that discussed purported limitations on accessing patient charts for quality of care issues (the very job duties Mraz was tasked with as a supervisor) and/or whether that information could be discussed with a fellow supervisor and/or FTO in order to determine the right supervisory and coaching approach.

40. AMR did not provide any written guidelines – even just a simple checklist -- to ensure that Mraz had access to the resources, training, and assistance that he might need to perform his job effectively.

41. During the course of Mraz's employment, he repeatedly asked for and requested access to programs and reports, assistance understanding the scope of his supervisory responsibilities, and answers to questions, as they would arise.

42. AMR did nothing to adequately lead, train, and define the scope of Mraz's job duties.

43. Moreover, Mraz never received training that extended beyond his medic training, and therefore, any confusion about "role responsibilities" was not Mraz's fault – it was the fault of executive leadership that failed to properly train supervisory individuals, when they transferred from medic/EMT roles into supervisory roles.

44. During the entire time that Mraz was employed by AMR, after his initial medic orientation, he did not receive a single evaluation.

45. During the course of his medic orientation, in order to receive credentialing, Mraz was reviewed, as it related to his patient encounters.

46. Once Mraz demonstrated that he could successfully perform as a medic, he was moved into regular job duties, and thereafter, his performance was never again evaluated by AMR.

47. Mraz did not receive a single formal or informal performance review from 2012, after his initial credentialing, and through 2020.

48. Mraz did not receive formal annual evaluations from 2012, after his initial credentialing, and through 2020.

49. Mraz was never put on any performance improvement plan from 2012, after his initial credentialing, and through 2020.

50. Mraz was not given coaching opportunities by AMR from 2012, after his initial credentialing, and through 2020.

51. AMR did nothing to appropriately evaluate Mraz's job performance, let alone train him properly, were AMR to believe Mraz was somehow deficient in his job duties.

52. In addition, there were numerous other options available to AMR, in place of termination.

53. AMR could have conducted appropriate training, not only of Mraz, but of all employees, regarding any HIPAA or other concerns.

54. AMR could have put a Performance Improvement Plan in place.

55. At any time during his employment, AMR could have coached Mraz on the issues involved.

56. AMR could have provided training and direction to Mraz.

57. Instead, rather than addressing its own deficient leadership, AMR took the severe and inexcusable step of unilaterally taking away a person's right to employment, to provide for his family, and to maintain his livelihood.

58. The aforementioned actions by AMR were illegal and unlawful.

59. Mraz was not given a full and fair opportunity to address any concerns his employer may have had.

60. Mraz was not given the opportunity to fully explain his "side of the situation," before termination.

61. Mraz's employer failed and refused to utilize any appropriate graduated-form of constructive counseling or discipline.

62. Mraz's employer failed to consider the innate rights that Mraz has an employee in Montana, to retain employment.

63. Mraz's employer failed to follow their own written policies and procedures regarding handling of alleged employee performance issues.

64. Mraz's employer failed to follow its own grievance procedures, during the course of the discussions preceding Mraz's discharge from his employment.

65. AMR violated Montana law when it discharged and/or allowed the discharge of Mraz from his employment, which is an inalienable right that employees in Montana hold.

66. Mraz is entitled to relief in this action, including back pay, back benefits, front pay, front benefits, lost wages, fringe benefits (both back and front), legally-allowable interest, and other consequential and compensatory damages allowed by law.

### Count II:  Punitive Damages

67.  Mraz hereby incorporates the previous paragraphs, as if fully set forth herein.

68. The WDEA provides as follows:

> 39-2-905. Remedies. (1) If an employer has committed a wrongful discharge, the employee may be awarded lost wages and fringe benefits for a period not to exceed 4 years from the date of discharge, together with interest on the lost wages and fringe benefits. Interim earnings, including amounts the employee could have earned with reasonable diligence, must be deducted from the amount awarded for lost wages. Before interim earnings are deducted from lost wages, there must be deducted from the interim earnings any reasonable amounts expended by the employee in searching for, obtaining, or relocating to new employment.
>
> (2) The employee may recover punitive damages otherwise allowed by law if it is established by clear and convincing evidence

that the employer engaged in actual fraud or actual malice in the discharge of the employee in violation of 39-2-904(1)(a).

69. Mraz's employer engaged in actual fraud or actual malice in the discharge of Mraz's employment. It failed to conduct any appropriate investigation into the alleged claims, it ignored any attempts by Mraz to address the alleged issues, it fully intended, with malice, to discharge Mraz without providing any other options for him continuing his employment (including a PIP or other constructive coaching/counseling), and it utilized personal "feelings" of supervisors, versus actual facts, to justify its termination of Mraz's employment.

70. Mraz is entitled to punitive damages for the actions of the AMR in discharging and/or allowing the discharge of his employment, based upon actual fraud and/or actual malice.

### Count III:  Retaliation/Whistle-Blowing

71. Mraz hereby incorporates the previous paragraphs, as if fully set forth herein.

72.  Mont. Code Ann. § 39-2-904 further provides that a discharge is wrongful if "(a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy ...".

73. In his role as supervisor, Mraz had a legal and ethical obligation to report any violations that he saw of public policy, including violations of the patient standard of care and/or the professional responsibilities of medics providing patient care.

74. Mraz's discharge from employment was in retaliation for his reporting of violations of public policy.

75. Therefore, Mraz's discharge from his employment was wrongful for these reasons, in addition to the ones stated hereinabove.

## REQUEST FOR RELIEF

WHEREFORE, Mraz respectfully requests that:

1.  That this Court enter Judgment in favor of Plaintiff and against AMR and award the

    following relief:

    a.  Lost wages and benefits, in an amount to be determined at trial, including both

        back and front pay;

    b.  Any other applicable compensatory and consequential damages;

    c.  Punitive damages against AMR;

    d.  Pre-judgment and post-judgment interest at the highest lawful rate;

    e.  Attorneys' fees and costs of this action; and

    f.  Any such further relief as is deemed appropriate.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

DATED this 24th day of September, 2020.

MERIDIAN LAW, PLLC

By: _Michele L B_____

MICHELE L. BRAUKMANN
P.O.   Box   22542
Billings, MT 59104
PH: 406.578.8855
Cell: 406.671.3963
Email: michele@meridianlawmt.com

*Attorney for Tyrel Mraz*

P a g e  11 | 12

Exhibit A, Page 11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Complaint was mailed with a Notice and Acknowledgment of Service by First Class U.S. Mail, postage prepaid, by the undersigned, this 24th day of September, 2020, to the following Attorney for Defendant, addressed as follows, as well as sent via Electronic Mail, to the email address below:

> Jason S. Ritchie
> Ritchie Manning Kautz PLLP
> 175 North 27th Street, Suite 1206
> Billings MT  59101
> E-mail: jritchie@rmkfirm.com

MERIDIAN LAW, PLLC

By: *Michele L B*

MICHELE L. BRAUKMANN

Exhibit A, Page 12